**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Astaris, LLC, | No. CIV 03-1468-PHX-ROS |
| Plaintiff, | **OPINION and AMENDED ORDER** |
| vs. | |
| Fire-Trol Holdings, LLC, | |
| Defendant. | |

In an Order filed on March 31, 2005, this Court issued its rulings on Defendant Fire-Trol Holdings, LLC's ("Fire-Trol's") Renewed Motion for Summary Judgment (Doc. #49), Astaris' Motion for Preliminary Injunction (Doc. #70), Defendant Fire-Trol's Motion for Stay of Astaris' Motion for Preliminary Injunction and Fire-Trol's Agreement to be Bound by Temporary Restraining Order (Doc. #75), and Astaris' Motion to Strike New Matters (Doc. #84). The Order stated that a written opinion would follow. This is that opinion.

**I.    JURISDICTION**

Astaris' claims arise under federal patent laws, thus the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**II.    BACKGROUND**

**A.    Facts**

Astaris and Fire-Trol are the sole manufacturers and suppliers of aerial fire retardant to the United States, largely used by the U.S. Forest Service (Department of Agriculture) and

the Bureau of Land Management (Department of the Interior) to combat wild fires.  [Doc.

#51 (Defendant's Statement of Facts ("DSOF")) ¶ 1.]    Astaris owns U.S. Patent No.

4,606,831 (hereafter '831) for a fire retardant containing a ("DMTD")[1] chemical. [Doc. #1

(Compl.) ¶¶ 7, 12.]   The patent was issued in August 1986 (Id. ¶ 7) and will expire in June

2005 (DSOF ¶ 4).

From time to time, the USFS publishes "Solicitations" in which it requests the

submission of sealed bid offers for the purchase of fire retardant.  [DSOF ¶ 7.]  From 1997

on, the USFS' Solicitations have required that all products submitted for bidding must have

been qualification tested (demonstration burn tested) by the USFS as a prerequisite for

contracting.  [Id. ¶ 9.] The USFS Solicitations and purchase contracts during the relevant

period included a standard authorization clause (Federal Acquisition Regulation ("FAR")

52.227-1 (C.F.R. §52.227-1) by reference, under which the United States may assume

liability for patent infringement relating to the product solicited or purchased.  [Id. ¶¶ 10, 12.]

Qualification testing of a fire retardant by the USFS takes approximately three years, (Id. ¶

13) and is conducted pursuant to the terms of Collection Agreements, which are contracts

between the USFS and the provider of the materials being tested (Id. ¶ 15).  The Collection

Agreements do not include an authorization clause either expressly or by reference.  [Doc.

#79 (Plaintiff's Statement of Facts ("PSOF")) ¶2 .]

The allegedly infringing products were submitted by Fire-Trol for qualification testing

under Collection Agreements in August 2000 and September 2001.  [DSOF ¶ 18.] However,

the USFS has not accepted delivery of Fire-Trol's allegedly infringing retardants under any

type of purchase agreement.  [Id. ¶ 3.]

Astaris' Complaint alleges patent infringement and requests, among other relief, an

injunction enjoining Fire-Trol from further infringing the '831 patent. [Compl. pp. 4-5.]

---

[1]Dimercaptothiadiazole.

**B.     Procedural history**

On January 5, 2004, Fire-Trol filed a Motion for Summary Judgment (Doc. # 20) arguing that 28 U.S.C. §1498(a) applies to bar the Complaint in District Court, and requesting that the Complaint be dismissed.  In a hearing on February 20, 2004, the Court ruled from the bench denying Fire-Trol's pending motions for sanctions. [Doc. #44.] At the same time, the Court unintentionally stated that Fire-Trol's summary judgment motion was denied.  On March 12, 2004, Fire-Trol filed a Renewed Motion for Summary Judgment. [Doc. #49.] At a May 21, 2004 hearing, the Court clarified that its statement regarding summary judgment had been unintentional, permitted limited additional discovery and set deadlines for response and reply to Fire-Trol's renewed summary judgment motion.  [Doc. # 66.]  Astaris filed its Response to the renewed motion on July 21, 2004 (Doc. # 78), followed by Fire-Trol's Reply (Doc. # 80), filed on August 9, 2004.

**III.    DISCUSSION**

**A.     Astaris' Motion to Strike New Matters (Doc. #84)**

On August 23, 2004, Astaris filed a motion requesting the Court to strike the affidavits of Robert Crouch and Joseph Grigel filed with Fire-Trol's Reply regarding its summary judgment motion, and also strike copies of appellate briefs attached to Fire-Trol's Reply that had been filed with the Federal Circuit in W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1282-83 (Fed. Cir. 1988).  Regarding the affidavits, Astaris complains they were new matters improperly filed in a reply brief.  With regard to the Garlock briefs, Astaris asserts that they are not relevant to this Court's analysis because Fire-Trol invites the Court to draw inferences from the briefs about the Federal Circuit's decision that the Federal Circuit did not mention or make clear in its written opinion.

**1.     Crouch's initial declaration**

Fire-Trol attached a declaration of Robert Crouch, Ph.D (Doc. #50) to support its Renewed Motion for Summary Judgment. In that affidavit, Mr. Crouch stated that "Fire-Trol has never sold, or offered for sale any [of the products being tested by the USFS] to anyone[,]" that "Fire-Trol has never sold, or offered for sale a product containing DMTD to

1   anyone[,]" and that "Fire-Trol has not designed, developed, manufactured, used, sold, or

2   offered for sale, directly or through another, any composition containing DMTD other than

3   for testing by the USFS."  [Doc. #50 ¶¶ 22, 23, 25.]

4         In Astaris' Response to Fire-Trol's renewed summary judgment motion it stated

5   without record citation that "Fire-Trol will offer to sell its fire retardants to customers other

6   than the U.S. Government, such as the States of California, Alaska and Minnesota."  [Doc.

7   #78, p. 3.]  Additionally, Astaris contended that California and other states might purchase

8   Fire-Trol's allegedly infringing products if the USFS qualifies those products after

9   demonstration testing, so that it is possible that Fire-Trol's submission for testing of such

10  products "will result in either no sales to anyone or in sales to only the state governments.

11  None of that activity will have been for the U.S. Government, and none of it will be for the

12  U.S. Government unless and until the Forest Service buys Fire-Trol's DMTD products."

13  [Doc. #78, p. 7.]

14        **2.**        **Crouch's deposition testimony**

15        Prior to filing its Response to Fire-Trol's renewed summary judgment motion, Astaris

16  deposed Mr. Crouch. [Doc. #79 (Astaris' Statement of Undisputed Facts), Ex. A (Crouch

17  Depo.)]  In its Statement of Undisputed Facts filed with its Response, Astaris states that Mr.

18  Crouch conceded at his deposition that he had not expressly verified with Fire-Trol sales

19  personnel his statement that Fire-Trol had never sold the allegedly infringing products or

20  offered them for sale.  [Id., p. 3.]   Additionally, Astaris states that while "Fire-Trol has not

21  contracted to sell any DMTD products to the Forest Service[,]" (Doc. 79 ¶ 4), "Fire-Trol sold

22  fire retardants to the State of California under prior Forest Service contracts[]" (Id. ¶ 13), and

23  "[i]f Fire-Trol's DMTD fire-retardants are placed on the [USFS Qualified Products List],

24  Fire-Trol can sell them to California, Minnesota and Alaska."  [Id. ¶ 14.]

25

26

27

28

1    Fire-Trol attached to its Reply filed on August 9, 2004 the disputed additional

2    declarations by Mr. Crouch and by Joseph Grigel, Fire-Trol's general manager whom Crouch

3    mentioned at his June 24, 2004 deposition was the Fire-Trol official would have been in

4    charge of any attempts to sell products to entities that were not current Fire-Trol customers.

5    **3.     Crouch's supplemental declaration**

6    The relevant portion of Mr. Crouch's supplemental declaration is his statement: "I

7    have verified that Fire-Trol has never sold, or offered for sale any products containing

8    DMTD ("FDP products") to anyone by discussing the matter with all persons having

9    knowledge concerning the FDP products, including Joseph Grigel, General Manager in

10   charge of sales for Fire-Trol."  [Doc. #82 ¶ 8.]

11   **4.     Grigel's declaration**

12   The salient statement in Mr. Grigel's declaration is:

13   It is my understanding that Astaris has argued that Fire-Trol will sell its FDP
     products to the State of California once they are placed on the USFS' Qualified
14   Products List ("QPL").  Contrary to Astaris' contention, Fire-Trol does not
     intend to sell any FDP products to California even if such products are placed
15   on the USFS' QPL.  In addition, Fire-Trol intends to refuse to sell FDP
     products to California during the life of Astaris' patent even if California
16   specifically requests to purchase products containing DMTD.  Fire-Trol has
     made the decision to not sell products containing DMTD to California or any
17   other customer, other than the USFS, in order to avoid any potential liability
     for patent infringement.

18

19   [Doc. #83 (Grigel Decl.) ¶ 7.]

20   **5.     Analysis**

21   Astaris argues that if the declarations of Crouch and Grigel "offer anything new" then

22   they are "inappropriate" and should be stricken.  Astaris contends that the declarations placed

23   them at a disadvantage because they only had reason to depose Crouch because his was the

24   only declaration attached to Fire-Trol's renewed summary judgment motion.  Astaris states

25   that it had no reason to depose Grigel because his declaration was offered after the

26   opportunity for disclosure had closed.  [Doc. #86, p. 2.]

27   Rule 56(e) provides that the court "may permit affidavits to be supplemented."

28   Moreover, it would be illogical to conclude that "reply briefs are allowed but that a party is

1    proscribed from backing up its arguments in reply with the necessary evidentiary material."

2    Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1456-57 (E.D. Wis. 1993), aff'd, 41 F.3d

3    1510 (7th Cir. 1994).  If an affidavit submitted in reply "merely responds to matters placed

4    in issue by the opposition brief and does not spring upon the opposing party new reasons for

5    the entry of summary judgment, reply papers – both briefs and affidavits – may properly

6    address those issues."  Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1134 (7th

7    Cir. 1996) (quoting Baugh, 823 F. Supp. at 1457).

8         As noted, Astaris contends that Mr. Crouch's declaration attached to Fire-Trol's

9    summary judgment motion is not reliable because his statement that Fire-Trol had never sold

10   or offered for sale any of the allegedly infringing retardant was not based on personal

11   knowledge, in that he had not verified his belief with Fire-Trol's sales personnel.  [Doc. #79,

12   p. 3.]  Mr. Crouch's June 24, 2004 deposition included the following exchange:

13        Q.    How is it that you know that Fire-Trol has never offered for sale a fire
14              retardant containing DMTD to anyone?

15        A.    Because I had responsibility for approving the products at the time that we
              were actively submitting those products to the Forest Service for testing.  And
16             they would not have been approved for sale other than with my knowledge.

17        Q.    Is it possible that someone from Fire-Trol offered the product for sale subject
              to testing without your knowledge?

18        A.    Anything is possible.  I have no knowledge that any product containing
19             DMTD was sold to anyone.

20        Q.    Have you – can you say for sure that no product containing DMTD was
              offered for sale to any potential customer of Fire-Trol?

21        A.    You know, anything is possible.  But I just don't believe that ever happened.

22        . . . . .

23        Q.    Well, are there any other state governments [in addition to California] who buy
              fire retardant?
24
25        A.     Yes.  The state of Minnesota, to my knowledge, and the state of Alaska.

26        Q.     Has Fire-Trol ever attempted to sell fire retardants to those two states?

27        A.    Yes.  To my knowledge, yes.

28        Q.    Have you – were you ever involved in those attempts?

                                        - 6 -

1      A.      No.

2      Q.      Who at Fire-Trol is in charge of making those attempts to sell products to
               people who are not currently customers of Fire-Trol?
3

4      A.      That would be Joe Grigel, the general manager.

5      Q.      Do you know whether Mr. Grigel has talked with either the state of Alaska or
               the state of Minnesota about the possibility that Fire-Trol will be making
6              available for sale DMTD fire retardants?

7      A.      I have no knowledge of that.

8      Q.      You don't know either way?

9      A.      I don't know either way.

10     [Doc. #79, Ex. A (Crouch Aff.), pp. 16-18.]

11             The subsequent declaration of Robert Crouch and portions of Joseph Grigel's

12     declaration are proper and were not stricken because they supplement information that

13     directly supports Robert Crouch's initial statement that use of the infringing products has

14     been strictly limited to demonstration testing by the USFS and that it has not offered the

15     products for sale to anyone other than the USFS.

16             Mr. Grigel's affidavit, however, contains additional statements that veer into the realm

17     of new evidence; that is, his explanation why Fire-Trol had decided to refuse to sell any

18     infringing products to anyone other than the USFS.  In his initial declaration, Mr. Crouch did

19     not explain the reasons why Fire-Trol had not developed, manufactured, offered for sale or

20     sold any infringing retardant other than that provided to the USFS for testing.  The portions

21     of Mr. Grigel's declaration that refer to Fire-Trol's infringement avoidance decision are in the

22     nature of new evidence and were stricken.  Further, those statements were not considered by

23     the Court in deciding Fire-Trol's summary judgment motion.

24             Additionally, the Court agrees with Astaris that it would improper for this Court to

25     draw inferences about the Federal Circuit's opinion in Garlock based on its review of the

26     appellate briefs proffered by Fire-Trol.  The Court restricted its analysis of Garlock opinion

27     to the actual opinion and did not venture outside the opinion to divine its meaning.

28

1    For the foregoing reasons, Astaris' Motion to Strike New Matters was granted in part,

2    striking the portions of Mr. Grigel's declaration that addressed the reasons behind Fire-Trol's

3    decision to restrict its use of infringing retardant to USFS testing and further striking the

4    appellate briefs in Garlock, and denied in part, declining to strike portions of the declarations

5    of Mr. Crouch and Mr. Grigel supporting the statements Mr. Crouch made in his initial

6    declaration that Fire-Trol's use of the infringing products has been strictly limited to

7    demonstration testing by the USFS.

8    **B.    Fire-Trol's Renewed Motion for Summary Judgment based on 28 U.S.C. §1498
9    (Doc. #49)**

10    Fire-Trol requests summary judgment, arguing there are no material factual issues and

11    that as a matter of law its manufacture and submission for testing of the allegedly infringing

12    retardant was done by and for the United States Government with the Government's implied

13    authorization and consent in accordance with 28 U.S.C. §1498(a).  Fire-Trol contends that

14    the case must accordingly be dismissed.

15    Title 28 U.S.C. §1498 "relieves a federal contractor of liability where the contractor

16    uses or manufactures an infringing invention for the United States." Toxgon Corp. v. BNFL,

17    Inc., 312 F.3d 1379, 1381 (Fed. Cir. 2002).  Section 1498 "acts as a waiver of sovereign

18    immunity and consent to liability by the United States."  Madey v. Duke Univ., 307 F.3d

19    1351, 1359 (Fed. Cir. 2002).  The purpose of this waiver of liability is to enable the United

20    States Government "to purchase goods for the performance of its functions without the threat

21    of having the supplier enjoined from selling patented goods to the Government." Coakwell

22    v. United States, 372 F.2d 508, 511 (Cl. Ct. 1967).  When the United States chooses to make

23    unlicensed use of a patented product, the United States must pay "just compensation" for

24    such use, generally in the form of a fair royalty.  Robishaw Engineering, Inc. v. United

25    States, 891 F. Supp. 1134, 1139 (E.D. Va. 1995).

26    Section 1498 provides in pertinent part:

27    (a) Whenever an invention described in and covered by a patent of the United
     States is used or manufactured by or for the United States without license of
28    the owner thereof or lawful right to use or manufacture the same, the owner's

remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture . . . .
. . . .

For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

In actions in which the United States is not a party, §1498(a) provides an affirmative defense rather than a jurisdictional bar. Crater Corp. v. Lucent Techs., 255 F.3d 1361, 1364 (Fed. Cir. 2001).

Fire-Trol explains that the Government contract under which it provides fire retardant includes an "Authorization and Consent Clause," incorporating by reference FAR 52.227-1. FAR 52.227-1(a) (found at 48 C.F.R. §52.227-1(a)) provides:

(a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article *the delivery of which is accepted by the Government under this contract* **or** (2) used in machinery, tools, or methods *whose use necessarily results from compliance* by the Contractor or a subcontractor *with (i) specifications or written provisions forming a part of this contract* or (ii) *specific written instructions given by the Contracting Officer directing the manner of performance*. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinunder granted.

(Emphasis added). Under this clause, the United States agrees to the use and manufacture of infringing products and assumes liability for such infringement.

The parties' application of §1498 to the issues here frames the question central to this dispute: whether the Government has given its authorization and consent to Fire-Trol for the allegedly infringing fire retardant Fire-Trol submitted to the USFS for demonstration burn testing, thus triggering the provisions of §1498.

Fire-Trol argues that its manufacture and testing of the allegedly infringing fire retardant falls within the ambit of 28 U.S.C. §1498, such that Astaris' action must be against

- 9 -

1  the United States in the Federal Court of Claims, and that this case must be dismissed. Fire-

2  Trol asserts that §1498 applies because the testing of its retardant is being conducted by the

3  USFS as a condition for eligibility for solicitation made by the USFS, and because the

4  solicitation includes an express authorization and consent.

5       In contrast, Astaris contends that summary judgment is not warranted under 28 U.S.C.

6  §1498 because: (1) the United States cannot be liable for infringement by Fire-Trol in

7  making and testing the DTMD products prior to submitting such products to the USFS for

8  testing; (2) § 1498 would not apply to Fire-Trol's sales of DTMD products to the State of

9  California; (3) because the United States expressly waived its immunity in the Solicitations

10 and Contracts it uses to procure fire retardant, but such express waiver is not found in the

11 Collection Agreements it uses for mandatory testing of fire retardant, no waiver of immunity

12 for testing should be implied; and (4) infringement by Fire-Trol is not "necessary" because

13 Fire-trol sells other fire retardant products to the USFS that do not infringe the Patent. [Doc.

14 #78 (Pl.'s Resp.), pp. 1-2.]

15      Fire-Trol's Motion was granted for the reasons set forth below. Each of Astaris'

16 arguments against the granting of summary judgment is addressed in turn.

17      **1.      Liability for pre-testing activities**

18      Astaris contends that §1498 immunity cannot apply to any of Fire-Trol's activities in

19 developing the DTMD products prior to submitting the products to the USFS for testing.

20 Astaris argues that because the United States could not have been aware of Fire-Trol's

21 activities to develop the DTMD products prior to submission to the USFS for testing, it could

22 not be held liable for those activities. Astaris concludes, "[a] potential government contractor

23 cannot excuse its patent infringement on the ground that the U.S. Government might, at some

24 unknown future date, decide to buy a product which resulted from the infringement." [Doc.

25 #78, p. 6.]

26      While Astaris' argument is facially reasonable, Astaris provides no case law support.

27 In fact, courts have rejected the argument. In Raymond Engineering, Inc. v. Miltope Corp.,

28 231 U.S.P.Q. 575 (1986), the Southern District of New York considered whether an alleged

1    infringer's pre-contractual activities fell within the protection of §1498. The infringer

2    designed, developed and manufactured a small quantity of the infringing product prior to

3    obtaining purchase orders from government contractors. Id. at 577. The patent holder

4    argued, as Astaris argues here, that the infringer did not "take these preliminary steps 'by and

5    for' the United States and section 1498 therefore does not apply." Id. The court rejected the

6    patent holder's argument, reasoning that "it is inconsistent with the purposes underlying

7    section 1498. . . . Requiring a government contractor to receive a purchase order with the

8    necessary authorization and consent clauses before even beginning the initial design and

9    development work would impair the efficiency and quality of the current contracting

10   system." Id. The court noted that the purpose of §1498 is to allow the government to

11   procure goods and services needed to conduct its functions without worrying about obstacles

12   arising from patent infringement claims regarding those goods and services. Id. at 577-78.

13   The court concluded that the infringer's "initial manufacture of the prototype was an essential

14   step in the contracting process . . . [and fell] within the scope of section 1498." Id. at 578.

15         In Robishaw Engineering, Inc. v. United States, 891 F. Supp. 1134, 1139 (E.D. Va.

16   1995), the court stated that a "contractor's immunity under §1498 generally begins before

17   §1498 relief against the government becomes available in the Court of Federal Claims.

18   While the patentee generally must wait to sue the government under §1498 until after the

19   government accepts delivery of the disputed item, the government's contractors are immune

20   from suit as soon as they engage in manufacture or even bid to supply products to the

21   government." 891 F. Supp. at 1141 (citing the Federal Circuit opinions in Trojan, Inc. v.

22   Shat-R-Shield, Inc., 885 F.2d 854, 856-57 (Fed. Cir. 1989); W.L. Gore & Assocs., Inc. v.

23   Garlock, Inc., 842 F.2d 1275, 1282-83 (Fed. Cir. 1988); TVI Energy Corp. v. Blane, 806

24   F.2d 1057, 1059-61 (Fed. Cir. 1986); and Stelma, Inc. v. Bridge Elecs. Co., 287 F.2d 163,

25   164 (3rd Cir. 1961)). Viewed in light of the purpose underlying §1498 to allow the

26   government to procure materials needed to operate without the fear of patent infringement

27   claims, a potential government contractor such as Fire-Trol is properly protected under §1498

28   from liability for patent infringement even during the time it develops and manufactures a

1  small quantity of infringing product for testing when the product is later subject to bidding

2  to supply the United States with the product.

3  **2.    Absence of waiver of immunity in collection agreement**

4        Astaris notes that the United States expressly waived sovereign immunity in the

5  Solicitation forms and Contracts, but no such waiver is included in the Collection

6  Agreements between USFS and Fire-Trol applicable to the testing of Fire-Trol's infringing

7  products.  Astaris argues that the United States cannot be deemed to have waived its

8  sovereign immunity simply by testing Fire-Trol's DTMD products because there is no

9  authorization and consent language in the Collection Agreements. Astaris reasons that where

10 the United States incorporated the authorization and consent provisions of 48 C.F.R.

11 §52.227-1 in both the Solicitation agreement and the Contract, the absence of express

12 authorization and consent clause in the Collection Agreements signals the United States'

13 intent not to waive immunity.  From this, Astaris concludes that the United States must have

14 affirmatively decided not to waive immunity in connection with its agreement to test Fire-

15 Trol's DMTD products.  [Doc. #78, pp. 7-8.]

16       Under Astaris' reasoning, because a Solicitation is merely an invitation to bid, and a

17 Collection Agreement is limited by its terms to the USFS's agreement to test products to

18 determine whether they qualify for listing on the qualifying products list, the waiver included

19 within the Solicitation should not be considered to extend to the testing of materials.  Astaris

20 urges that it would be improper to imply a waiver where no waiver was intended.  Further,

21 Astaris argues that the Federal Circuit's decision recognizing an implied waiver in <u>TVI</u>

22 <u>Energy Corp. v. Blane</u>, 806 F.2d 1057 (Fed. Cir. 1986), on which Fire-Trol's arguments

23 substantially rely, flies in the face of case law holding generally that a waiver of sovereign

24 immunity must be expressed and cannot be implied.  [<u>Id.</u>, p. 9.]

25       As Astaris impliedly concedes, its argument does not square with the Federal Circuit's

26 analysis in <u>TVI</u>.  In <u>TVI</u>, the Government invited public bids to supply the military with

27 disposable thermal targets.  806 F.3d at 1059.  The Government's bid solicitation mandated

28 that bidders submit specimen thermal targets for live testing demonstrations.  <u>Id.</u>  TVI filed

an action in the Eastern District of Virginia alleging patent infringement against Blane Enterprises, Inc. after an official for TVI noticed that Blane had demonstrated a product that TVI determined infringed its patent.  The District court held that Blane was immune from suit in federal district court under §1498.  On appeal, the Federal Circuit framed the issue as:

> whether a private party which infringes another's patent during Government bidding activities such as those present here is immune under 28 U.S.C. §1498 from a District Court infringement action for that test demonstration.  In other words, was Blane acting "by or for" the United States "with its authorization or consent" when it demonstrated the allegedly infringing targets at Fort Knox for the sole purpose of responding to the Government's demand for a "Product Demonstration," with the objective of acquiring a Government contract?

Id .

The Federal Circuit found §1498 immunity existed for Blane, rejecting TVI's argument that immunity was not available because Blane was a mere "competitor" for a Government contract and was "not yet an approved Government source."  Id. at 1060.  In finding that required submission of an infringing product to Government testing represented an activity "for the United States" "with its approval," the court concluded that "[t]he significant point is that the [alleged infringer] was *required* to demonstrate the allegedly infringing [product] as part of the Government's bidding procedure."  Id.  The court further noted that the alleged infringer's "only purpose in demonstrating the [products] was to comply with the Government's bidding requirements."  Id.

The court also rejected the patent holder's argument that the alleged infringer did not act with the authorization and consent of the Government because the Government had not executed an authorization and consent letter.  Id.  Noting that the Government's authorization and consent may be implied under proper circumstances, the court held that "Government authorization was expressed by the specific requirement that [the alleged infringer] demonstrate, under the guidelines of the bidding procedure, the allegedly infringing [products.]"  Id.

TVI is squarely on point.  Here, as was the infringer in TVI, Fire-Trol was required to submit its products for testing by the USFS before it could qualify for a contract to supply those products.  Specifically, the USFS' Solicitation Form used for soliciting bids for

products includes "Qualification Requirements," defined as 'a Government requirement for testing or other quality assurance demonstration that must be completed before award." [Doc. #49, Ex. 2, p. 52 ¶ I-4(a).]  The requirements include that the product offeror have demonstrated that the product "meets the standards prescribed for qualification before award of this contract. . . .  Offerors should contact the agency . . . to obtain all requirements that they  . . . must satisfy to become qualified and to arrange for an opportunity to demonstrate their abilities to meet the standards specified for qualification."   [Id. ¶ I-4(b).]

Astaris urges that this similarity does not dispose of the question because here there is a Collection Agreement governing product testing that did not include or incorporate a consent and authorization clause: "[t]he notion that the U.S. Government waived its sovereign immunity in one contract because it waived that immunity in another contract makes no sense."  [Doc. #78, p. 7.]

The view most consistent with the "broad" coverage provided by §1498 is that the Solicitations, which require demonstration testing of products and which include an express authorization and consent clause for tested products obtained under a contract, anticipate that the authorization and consent will extend to the very limited use of an infringing product in pre-contractual testing by the Government.[2]  This view is consistent with the approach adopted by the Federal Circuit in TVI, 806 F.2d at 1060 and Garlock, 842 F.2d at 1282.  See also Parker Beach Restoration, Inc. v. United States, 58 Fed. Cl. 126, 133 (Fed. Cl. 2003) (noting "broad" construction of §1498 in TVI, and distinguishing TVI because TVI only decided that §1498 immunity applied to the infringer and did not decide whether TVI had a cause of action against the United States for patent  facts).

**3.    Necessary infringement**

---

[2]   The Federal Circuit noted in TVI that the "'demonstration-infringement' was minimal at best.  The total value of the targets was only $500, and [the infringer] received no commercial profit from the use of the [infringing products]; they were used solely for the purposes of [demonstration testing.]"  806 F.2d at 1061.

1   Astaris contends that Fire-Trol's provision to the USFS of infringing products for

2   testing does not qualify under the USFS's authorization and consent pursuant to FAR

3   §52.227-1(a) because the USFS did not expressly require Fire-Trol to infringe Astaris' patent

4   in order to meet USFS specifications.  Astaris further argues that Fire-Trol currently sells fire

5   retardants to the USFS which meet the specifications and do not infringe Astaris' patent and

6   concludes this establishes that it was not "necessary" for Fire-Trol to submit an infringing

7   product for testing.

8   This argument was refuted by the Federal Circuit in <u>TVI</u>.  After recognizing that the

9   Government had impliedly expressed its authorization and consent by specifically requiring

10  a demonstration of the infringing product, the court concluded:

11      The mere fact that the Government specifications for the [infringing product]
        did not absolutely require Blane to infringe TVI's patent at that demonstration
12      does not extinguish the Government's consent.  To limit the scope of §1498
        only to instances where the Government requires by specification that a
13      supplier infringe another's patent would defeat the Congressional intent to
        allow the Government to procure whatever it wished regardless of possible
14      patent infringement.

15  806 F.2d at 1060.  <u>TVI</u> addressed the very issue presented here, where demonstration testing

16  was required prior to the submission of bids for product sales, and the solicitation did not

17  include specifications that would require patent infringement.  <u>TVI</u> is persuasive authority

18  and disposes of Astaris' "necessary infringement" argument.

19  **4.      Fire-Trol's sales of DTMD products to the State of California**

20  Immunity from liability pursuant to §1498 extends only to sales to the United States.

21  In that Fire-Trol has in the past sold non-infringing fire retardant to the State of California,

22  Astaris contends that California and other states may in the future purchase Fire-Trol's

23  infringing products once the products are listed on the Qualified Product List.  Astaris

24  asserts:

25      It is therefore possible (and this Court must assume for purposes of this
        motion) that all of Fire-Trol's testing and development of DMTD products, as
26      well as the Forest Service's qualification testing of the products, will result in
        either no sales to anyone or in sales to only the state governments.  None of
27      that activity will have been for the U.S. Government, and none of it will be for
        the U.S. Government unless and until the Forest Service buys Fire-Trol's
28      DMTD products.

1   [Doc. #78, p. 7.]  Astaris concludes that under such a scenario, Fire-Trol's manufacture and

2   testing of DMTD products would not have been "by and for" the United States as is required

3   to trigger §1498 immunity.

4          Astaris in essence invites the Court to decide Fire-Trol's motion based on speculation

5   that because Fire-Trol has at some time sold non-infringing retardant to the State of

6   California, it may sell infringing products to California or another state in the future, such

7   that the manufacture and testing of the retardant would not be entirely by and for the United

8   States.  The Court declines Astaris' invitation.  "[M]ere allegation and speculation do not

9   create a factual dispute for purposes of summary judgment."  Nelson v. Pima Comty. Coll.,

10  83 F.3d 1075, 1081-82 (9th Cir. 1996).

11         Moreover, Astaris' argument falters on the unsupported assumption that testing by the

12  USFS of Fire-Trol's DMTD products will not "be for the U.S. Government unless and until

13  the Forest Service buys Fire-Trol's DMTD products."  This assumption ignores relevant case

14  law holding that a prospective contractor may qualify for §1948 immunity by bidding with

15  the United States to supply alleged infringing products.  The Federal Circuit has instructed

16  that "Section 1498(a) would be emasculated if a patent holder could enjoin bidding to supply

17  infringing products.  . . . [A] patent holder may not use its patent to cut the government off

18  from sources of supply, either at the bid stage or during performance of a government

19  contract."  Trojan, 885 F.2d at 856-57.  In Garlock, the Federal Circuit noted that §1498

20  provides broad coverage "'so as not to limit the Government's freedom in procurement by

21  considerations of private patent infringement.'"  842 F.2d at 1282 (quoting TVI Energy, 806

22  F.2d at 1060).  The court concluded that the broad reach of §1498 would permit the infringer

23  "freedom *to bid on* and participate in the sale to the government of products which, or the

24  process of making which, infringe Gore's patents.  In our view, [§1498] . . . assures it that

25  right without interference from Gore – automatically."  Id. (emphasis added).

26  **C.    Astaris' Motion for Preliminary Injunction (Doc. # 70)**

27         **Defendant Fire-Trol's Motion for Stay of Astaris' Motion for Preliminary**
    **Injunction and Fire-Trol's Agreement to be Bound by Temporary Restraining**
28  **Order (Doc. #75)**

1       On June 4, 2004, Astaris requested a preliminary injunction to enjoin Fire-Trol from

2  having any further testing done on Fire-Trol's products that infringe the '831 patent and from

3  manufacturing, selling or offering to sell any infringing products, and to require Fire-Trol to

4  withdraw all infringing retardants from consideration by the USFS for qualification or

5  placement on the approved product list.  [Docs. # 70, 71.]   On June 17, 2004, Fire-Trol

6  moved the Court to stay Astaris' motion for preliminary injunction and asserted its

7  willingness to agree to be bound by a temporary restraining order prohibiting it from selling

8  or offering to sell any allegedly infringing products through September 2004 or until this

9  Court had ruled on Fire-Trol's renewed motion for summary judgment, whichever was the

10  earlier.  Additionally, Fire-Trol signaled some willingness to extend the terms of a TRO

11  beyond September 2004.  [Doc. #75.]

12      Astaris filed its Response to Fire-Trol's Motion for Stay of Preliminary Injunction on

13  July 6, 2004 (Doc. # 76).  Astaris concurred with Fire-Trol that "it makes sense to address

14  the governmental immunity issue early in this litigation" and further agreed that a TRO such

15  as that offered by Fire-Trol would be sufficient "to address Astaris' infringement concerns."

16  [Doc. # 76, p. 2.]  Astaris also argued that the proposed TRO should be extended until

17  resolution of Astaris' preliminary injunction motion. [Id., pp. 2-3.]  In Reply, Fire-Trol stated

18  that it would be willing to discuss extending a TRO once its summary judgment motion had

19  been resolved.  [Doc. #77.]

20      Although this Court's March 31, 2005 Order denied Astaris' Motion for Preliminary

21  Injunction (Doc. #70) and granted Defendant Fire-Trol's Motion for Stay of Astaris' Motion

22  for Preliminary Injunction and Fire-Trol's Agreement to be Bound by Temporary Restraining

23  Order (Doc. #75), the Court deems the better ruling to be denial of these motions as moot.

24  The Court's March 31, 2005 Order (Doc. #87) will be amended to reflect that ruling.

25  **IV.    CONCLUSION**

26      For the reasons explained above, this Court's March 31, 2005 Order granted in part

27  and denied in part Astaris' Motion to Strike New Matters, and granted Fire-Trol's summary

28  judgment motion.  As a result, the case will dismissed pursuant to 28 U.S.C. § 1498(a).

1    Additionally, this Amended Order denies as moot Astaris' Motion for Preliminary Injunction

2    (Doc. #70) and Defendant Fire-Trol's Motion for Stay of Astaris' Motion for Preliminary

3    Injunction and Fire-Trol's Agreement to be Bound by Temporary Restraining Order (Doc.

4    #75).

5           Accordingly,

6           **IT IS ORDERED DISMISSING** this action with prejudice pursuant to 28 U.S.C.

7    §1498(a).

8           **IT IS FURTHER ORDERED** amending this Court's Order filed on March 31, 2005

9    (Doc. #87) to **DENY AS MOOT** Astaris' Motion for Preliminary Injunction (Doc. #70) and

10   Defendant Fire-Trol's Motion for Stay of Astaris' Motion for Preliminary Injunction and Fire-

11   Trol's Agreement to be Bound by Temporary Restraining Order (Doc. #75).

12

13           DATED this 5th day of January, 2006.

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    _____
                                      Roslyn O. Silver
28                                    United States District Judge